# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                         CASE NO. 8:19-cr-314-T-36TGW

RONRICO GREEN.

_____/

## REPORT AND RECOMMENDATION

The defendant filed a Motion to Suppress and Request for Evidentiary Hearing Pursuant to <u>Franks</u> (Doc. 33). He argues that probable cause did not support the search warrants because material facts were omitted from the applications that, had they been included, would have prevented a finding of probable cause. Alternatively, the defendant argues that the search was overbroad.

The defendant has not made the preliminary showing required for an evidentiary hearing pursuant to <u>Franks</u> v. <u>Delaware</u>, 438 U.S. 154 (1978).  Thus, he has not shown that the affiant intentionally or recklessly omitted material facts from his affidavit that would have negated probable cause.  Furthermore, the search warrants were not overbroad.  I therefore recommend that the defendant's motion be denied in all respects.

I.

On April 12, 2019, United States Magistrate Judge Julie S. Sneed issued search warrants for defendant Ronrico Green's residence at 5888 59th Street North, in Pinellas County, Florida, and a "Black four-door Acura TSX bearing Florida tag JDSW52," which the defendant drove regularly, but was registered to his girlfriend, Tanesha Castleberry ("Acura") (see Docs. 33-1, 33-2).[1] The search warrants were related to the defendant's alleged violation of 18 U.S.C. 922(g), the charge of being a felon in possession of a firearm or ammunition (id.). The Government sought authorization to search for firearms, ammunition and paperwork and photographs related to the illegal purchase and possession of such items (id.). Judge Sneed found there was probable cause to believe that those locations contained evidence of the alleged crime.

The search warrants were issued upon the application of Scott W. Boshek, a Special Agent employed with the Bureau of Alcohol, Tobacco, Firearms and Explosives since 2005 (id., ¶¶1, 2). S.A. Boshek stated in his supporting affidavit that he did "not include[ ] each and every fact known to [him] concerning this investigation," but rather focused on the facts that he believed were essential to the determination of probable cause (id., ¶3). A

---

[1]The affidavits supporting both search warrants are the same.

summary of facts outlined in S.A. Boshek's affidavit follows.

On March 25, 2019, St. Petersburg Police Department (SPPD) officers responded to a shots heard call in St. Petersburg, Florida (id., ¶4). "S.J.", the alleged victim, told officers that the defendant was the shooter (id., ¶5).

S.J. said that she knew the defendant for about six years; she stated that her mother was a parent figure to him, and he was like a brother to her (id.). She told investigators that, as she arrived in her car, the defendant pulled up in a black four-door Acura and he

> got out of the car carrying a long-black colored rifle while shouting at everyone outside. S.J. stated Green ... fired rounds from the rifle into the air. S.J. stated she then attempted to get Green to calm down. Green, she said, replied "f*ck that shit!", and then pointed the rifle at her, causing her to fall on the ground. S.J. stated Green then started to fire multiple shots over S.J.'s head before re-entering his black Acura and leaving the area.

(id., ¶6) (emphasis omitted). D.G., who was a passenger in S.J.'s car, confirmed S.J.'s account of the shooting (id., ¶7). A.C. also reported seeing a black Acura, and that "Rico" (a shortened version of the defendant's first name) took a long military firearm out of the car and began shooting (id., ¶8). A.C. said she had not met the defendant in person but recognized him from pictures on Facebook (id.). At the approximate location that S.J. said

3

the defendant parked the Acura, a forensics technician located multiple ammunitions casings and saw numerous vehicles with bullet holes (see id.).

On April 6, 2019, SPPD officers arrested the defendant at his residence for the shooting (id., ¶11). A black four-door Acura TSX with Florida tag JDSW52 was in the driveway of the residence (id.). It was registered to Tanesha Castleberry (id., ¶14). The defendant bonded out of jail the following day.

On about April 9, 2019, SPPD officers contacted S.J. and D.G., and both stated that they no longer wished to cooperate with the investigation (id., ¶13). D.J. said he was "sure" that the defendant was the shooter, but he no longer wished to be involved (id). S.J. said that "she had too much going on" and "now [she] wasn't sure if it was [the defendant] who committed the shooting" (id.). In this regard, S.A. Boshek stated:

> Based on my training and experience, I know both victims and witnesses of violent crimes have a tendency to withdraw their cooperation following their initial interactions with law enforcement. I know witnesses and victims both sometimes become concerned for the safety of themselves as well as the safety of their families when it comes to having to give statements or testify against a violent criminal. I also know witnesses and victims are especially likely to become uncooperative when family members or close friends are the subject of the investigation.

(id., ¶15).

4

On April 9, 2019, the defendant agreed to meet with SPPD about this case (id., ¶12). He told investigators that he had lived in the 59th Street residence for about two years, and that he drove a black Acura registered to his girlfriend, Tanesha Castleberry (id.). The defendant denied any involvement in the shooting (id.).

S.A. Boshek stated in the affidavit that the defendant was a convicted felon with at least four felony convictions, including possession and sale of cocaine (id., ¶17). He said that, in his experience, it is common for drug dealers to re-engage in drug offenses, and the likelihood of a firearm being in the vehicle increases when a person is a drug dealer because the firearms are used as protection from robberies (id.). Furthermore, he explained that, in his experience, individuals in possession of illegal firearms store them in their homes for security or in their vehicles to have the firearm available to commit a crime (id., ¶16).

Magistrate Judge Sneed issued the search warrants on April 12, 2019, and law enforcement executed them on April 15, 2019. As a result of the searches, law enforcement found in the Acura a distribution amount of crack cocaine and a digital scale (see Doc. 37, p. 1). In the defendant's home, officers found a handwritten ledger (id.). On July 30, 2019, the defendant was indicted on a charge of knowingly and intentionally possessing, with

5

intent to distribute, crack cocaine in violation of 21 U.S.C. 841(a)(1), (b)(1)(C) (Doc. 1).

The defendant timely filed a Motion to Suppress and Request for Evidentiary Hearing Pursuant to Franks (Doc. 33). The motion was referred to me for a report and recommendation (Doc. 35). The Government filed a response in opposition to the motion (Doc. 37). The defendant, with leave of court, filed a reply (Docs. 40, 42).

The defendant alleges that S.A. Boshek intentionally, or recklessly, omitted from the search warrant affidavit material facts that, had they been included, would have negated probable cause (Doc. 33). At the hearing, the defendant particularly focused on two witnesses who identified different make vehicles in the vicinity of the shooting. He contends that this information, coupled with the alleged victim's refusal to cooperate, would have negated probable cause to believe that the Acura was connected to the shooting.

The defendant requests an evidentiary hearing "to allow the Court to make a full and fair determination of whether probable cause existed based on S.A. Boshek's omission of material facts" from the affidavit (Doc. 33, p. 15). He seeks suppression of "1) the items located inside the residence; 2) the items located inside the 2010 Acura TSX; and 3) the statements

6

obtained from him on April 15, 2019 while he was at the St. Petersburg Police Department" (id.).[2]   Alternatively, the defendant argues that the search warrants were overbroad and requests the court to suppress on that basis the handwritten ledger found in his home (see id.)

The Government argues in its opposition memorandum that the defendant lacks standing to challenge the search of the Acura.  Furthermore, the Government argues the motion

> should be denied because even if the omitted facts
> were included in the search warrant, there would
> still be probable cause for its issuance.  This
> argument should also be denied because the
> defendant has not met his burden of showing that
> any omission was reckless or intentional.  His
> backup argument for overbreadth should also be
> denied: it is wrong on the issue of probable cause
> and neglects good faith.

(Doc. 37, pp. 1–2).  The court, after granting two continuances requested by the parties (Docs. 41, 46, 48, 49), held oral argument to determine if a <u>Franks</u> hearing was warranted (see Doc. 51).

As discussed below, the defendant has failed to make the requisite showing for a <u>Franks</u> hearing.  Thus, the defendant has no evidence, nor did he articulate a cogent argument supporting his allegation, that S.A.

---

[2] The defendant did not develop this third challenge by any citation to facts or law, and it is therefore considered forfeited.  From all that appears, however, the defendant appeared at the police station voluntarily and there is no basis for suppression of his statements.

7

Boshek omitted material facts from the affidavit intentionally, or in reckless disregard of the truth. Moreover, the facts omitted from the affidavit clearly do not negate probable cause. Finally, the search warrants were not overbroad because such documentary evidence was relevant to the charge of being a felon in possession of a firearm.

## II.

Initially, the Government argues that the defendant lacks standing to challenge the search of the Acura (Doc. 37, pp. 7–8). The defendant did not address this contention in his reply memorandum, but it was discussed at the hearing.

On a motion to suppress, the defendant bears the burden of proving facts that demonstrate the reasonableness of his expectation of privacy in the searched area. United States v. Miravalles, 280 F.3d 1328, 1332 (11th Cir. 2002). A person has a reasonable expectation of privacy that is protected by the Fourth Amendment if: (1) he has a subjective expectation of privacy and (2) society is prepared to recognize that expectation as objectively reasonable. Id. at 1331.

At the hearing, the defendant argued that he had an objectively reasonable expectation of privacy in the Acura because he regularly drove it. The defendant contends further that it would be anomalous to find that he

lacks standing when the search warrant was based on <u>his</u> use of the Acura.

The Government, citing <u>United States</u> v. <u>Gibson</u>, 708 F.3d 1256, 1277 (11th Cir. 2013), argues that the defendant lacks standing because he was not the registered owner of the Acura and he was not in the car at the time of the search (Doc. 37, pp. 7–8). The Government correctly states the holding in <u>Gibson</u>.

In <u>Gibson</u>, a tracking device was installed on a Chevrolet Avalanche truck that the defendant drove frequently, but he did not own. Law enforcement installed the tracker because they suspected that the defendant was using the truck for drug trafficking. <u>Id</u>. at 1261. When law enforcement stopped the truck, the owner was driving and the defendant was not in the car. <u>Id</u>. at 1263. The deputy smelled marijuana emanating from the vehicle, and the owner consented to a search of the vehicle, during which the deputy found two kilograms of cocaine. <u>Id</u>. at 1262–63.

The defendant argued that, because he frequently drove the truck, and his use of the truck prompted law enforcement to install the tracking device, he had standing to challenge the searches. <u>Id</u>. at 1276. The Eleventh Circuit focused on whether the defendant had a legitimate expectation of privacy in the property <u>when</u> it was searched. <u>Id</u>. at 1277. While acknowledging the defendant's frequent use of the truck, the Eleventh

Circuit held that the defendant

> ha[d] not established that he had a reasonable
> expectation of privacy in the Avalanche ... when
> it was searched ... because he was not the legal
> owner of the Avalanche, he has not established
> that he had exclusive custody and control of the
> Avalanche, and he was neither a driver of, nor a
> passenger in, the Avalanche when it was searched.

Id. at 1278; see also United States v. Arce, 633 F.2d 689, 694 (5th Cir. 1980)
(The defendant lacked standing to contest the search since he had no
legitimate expectation of privacy in a car registered to someone else and he
was not a passenger in the car.).

Gibson is analogous to this case. Thus, the search warrants in
both cases were premised upon the defendant's, and not the owner's, use of
the vehicle. Furthermore, similar to Gibson, the defendant frequently used
the vehicle. Moreover, as in Gibson, the defendant was not in the vehicle at
the time of the search and did not present evidence of exclusive control of
the vehicle.

At the hearing, defense counsel argued that Gibson was
distinguishable because it involved a GPS tracker, but he did not articulate a
meaningful distinction between the two situations. Furthermore, a GPS
tracker constitutes a search under the Fourth Amendment. Id. at 1276.[3]

---

[3] Notably, in Gibson, there was also a physical search of the truck.

Therefore, in accordance with <u>Gibson</u>, the defendant lacks standing to challenge the search of the Acura.

The Government argues that the absence of standing moots the request for a <u>Franks</u> hearing, which was based on the Government's search of the Acura (Doc. 37, p. 7; <u>see</u> Doc. 33, pp. 10–12). Nonetheless, I have evaluated the merits of the motion, and the defendant has failed to make the preliminary showing required for a <u>Franks</u> hearing.

### III.

The Eleventh Circuit summarized the guiding principles for a <u>Franks</u> hearing in <u>United States</u> v. <u>Vazquez</u>, 406 Fed. Appx. 430, 431 (11th Cir. 2010) as follows:

> The Constitution prohibits an officer from making perjurious or recklessly false statements in support of a warrant. *Franks*, 438 U.S. at 164–65 …. To be entitled to a *Franks* hearing, a defendant must allege that the affidavit supporting the warrant contained a "deliberate falsehood" or "reckless disregard for the truth" from the affiant, which, when set aside, leaves insufficient "content in the warrant affidavit to support a finding of probable cause." *Id*. at 171–72 …. The requirement of a substantial preliminary showing "is not lightly met." *United States* v. *Arbolaez*, 450 F.3d 1283, 1294 (11th Cir.2006). The false statements must have been made knowingly and intentionally, as allegations of negligence or innocent mistake are insufficient. *Franks*, 438 U.S. at 171 …. The defendant bears the burden of establishing that, absent misrepresentations or omissions, the

warrant lacks probable cause. *See United States* v. *Novaton*, 271 F.3d 968, 986–87 (11th Cir. 2001).

Allegations of material omissions are treated similarly to claims of material misstatements. United States v. Martin, 615 F.2d 318, 328 (5th Cir. 1980). Accordingly, the defendant is entitled to a Franks hearing only if he makes a "substantial preliminary showing" that (1) "the omissions were made intentionally or with a reckless disregard for the accuracy of the affidavit" and (2) inclusion of the alleged omissions would have prevented a finding of probable cause. Id.; see also United States v. Barsoum, 763 F.3d 1321, 1328–29 (11th Cir. 2014). If the defendant fails to carry his burden as to either prerequisite, he is not entitled to a Franks hearing as a matter of law. United States v. Barsoum, supra, 763 F.3d at 1328–29.

## IV.

The defendant argues that S.A. Boshek deliberately or recklessly omitted material facts from the search warrant application that, had they been included, would have negated probable cause to search the Acura (Doc. 33, p. 10). Specifically, he contends that S.A. Boshek wrongfully failed to include in the affidavit that: (1) other witnesses reported seeing three different vehicles at the scene, none of which was an Acura; (2) the alleged victim advised officers that she followed the black Acura after

12

the shooting but could not provide a tag number to law enforcement and (3) law enforcement lacked evidence connecting the Acura to the scene of the shooting (id., pp. 10–11). This third contention appears to be based on SPPD officer Graves's statement that he could not "verify that [the Acura] was the exact vehicle" used during the shooting (id., p. 6).

The Government disputes that these are significant omissions because the two witnesses who reported different cars did not see the shooting, and S.J.'s failure to obtain the Acura license plate number is immaterial because S.A. Boshek did not state that any witness obtained a car tag number (Doc. 37, pp. 12–13). Moreover, the Government argues that officer Graves's comment that he could not confirm the Acura was involved in the shooting was a moot point because the defendant subsequently confirmed that he drove a black Acura with Florida tag JDSW52, thereby connecting the Acura to the scene of the shooting.

A.   The first prong of the Franks test requires a "concrete preliminary showing," United States v. Cross, 928 F.2d 1030, 1040 (11th Cir. 1991), that the affiant's omissions were intended to mislead the court or were in reckless disregard for the truth of the affidavit. See United States v. Sims, 845 F.2d 1564, 1571 (11th Cir. 1988); United States v. Martin, supra, 615 F.2d at 328. Thus, neither negligence nor mistake meets this standard.

13

Franks v. Delaware, supra, 438 U.S. at 171.

Furthermore, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine." Id. This requires supporting proof, usually in the form of affidavits or reliable witness statements. United States v. Flowers, 531 Fed. Appx. 975, 981 (11th Cir. 2013).

The defendant did not address in his motion or reply the first prong of the Franks test. Furthermore, at the hearing, defense counsel could not identify evidence showing that S.A. Boshek intentionally, or recklessly, omitted these facts. Rather, the defendant argues that this element is shown by the omissions themselves. Thus, the defendant contends that the omission of facts known to S.A. Boshek when applying for the search warrant implies that their omission was intentional or reckless.

Although "[i]t is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself," United States v. Martin, supra, 615 F.2d at 329, that is a rare circumstance, and this case is not one of them (see infra). As the Government aptly notes (Doc. 37, p. 11), accepting that argument here would eviscerate the rule that negligently or mistakenly omitted facts do not meet the Franks standard

14

(assuming they should have been included in the affidavit).  See United States v. Flowers, supra, 531 Fed. Appx. at 981.

The defendant contends that he needs to cross examine S.A. Boshek to obtain the requisite proof.  However, it is insufficient for the defendant to argue that a hearing would allow him to show that the information was deliberately or recklessly omitted.  See Franks v. Delaware, supra, 438 U.S. at 171; see, e.g., United States v. Flowers, supra, 531 Fed. Appx. at 981.  As the Martin court stated:

> Doubtless it will often be difficult for an accused to prove that an omission was made intentionally or with reckless disregard rather than negligently unless he has somehow gained independent evidence that the affiant had acted from bad motive or recklessly in conducting his investigation and making the affidavit. Nevertheless, it follows from *Franks* that the accused bears the burden of showing by a preponderance of the evidence that the omission was more than a negligent act.

615 F.2d at 329 (5th Cir. 1980).

The defendant's contention is not only unsupported, it does not make sense.  Thus, the argument that S.A. Boshek deliberately or recklessly omitted evidence exculpatory to the defendant in order to bolster a probable cause determination is unavailing because he included in the affidavit evidence favorable to the defendant that is more central to the issue of

15

probable cause than the alleged omissions. As the Government cogently argues (Doc. 37, pp. 11–12):

> Far from being reckless or intentionally hiding exculpatory information from his affidavit, the affiant in this case highlighted important information to the defendant's benefit regarding probable cause: that the two key witnesses no longer wished to cooperate with law enforcement, that the more important of the two, S.J., said that she was no longer sure that the defendant was the shooter, and that the Acura was not registered to the defendant. (Doc. 33-1, ¶¶13–14).

S.A. Boshek also stated that the defendant denied involvement in the shooting. Thus, S.A. Boshek included in the affidavit key facts and the most problematic evidence that could have undermined a finding of probable cause.

Moreover, S.A. Boshek advised Judge Sneed that "[a]dditional witnesses … were … interviewed" that he did not reference in the affidavit (see Doc. 33-1, ¶8), including witness statements that supported a finding of probable cause. Thus, S.A. Boshek omitted T.R.'s report that a black male "g[o]t out of a black Acura," and that an anonymous caller to 911 reported that the shooter was in a black Acura (Doc. 45, p. 4, Exh. 2). This circumstance underscores that S.A. Boshek included in the affidavit what he viewed as the essential facts, whether or not they supported probable cause. Accordingly, the defendant has not shown that, if S.A. Boshek omitted a

16

material fact, it was more than non-actionable negligence.  See Franks v.

Delaware, supra, 438 U.S. at 171.

In sum, the defendant failed to present any evidence that S.A.

Boshek omitted material facts from the affidavit in order to deliberately

mislead the court, or that he acted in reckless disregard of the truth.

Therefore, the defendant failed to satisfy the first prong of the Franks test.

In this circumstance, the court need not proceed any further in its analysis.

See id.

B.    In any event, the defendant also failed to satisfy the

second prong of the Franks test.  Under Franks, "even intentional or reckless

omissions will invalidate a warrant only if inclusion of the omitted facts

would have prevented a finding of probable cause."    United States v.

Pendleton, 447 Fed. Appx. 978, 981 (11th Cir. 2011).  It is the defendant's

burden to show that, if the omissions were included in the affidavit, they

would have negated probable cause.  See United States v. Novaton, 271 F.3d

968, 986–87 (11th Cir. 2001).

"Probable cause to support a search warrant exists when the

totality of the circumstances allows the conclusion that there is a fair

probability that contraband or evidence of a crime will be found in a

particular place." United States v. Lebowitz, 676 F.3d 1000, 1010–11 (11th

Cir. 2012).  It is a "commonsense decision," <u>United States</u> v. <u>Robinson</u>, 62 F.3d 1325, 1331 (11th Cir. 1995), incorporating "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." <u>Illinois</u> v. <u>Gates</u>, 462 U.S. 213, 241 (citation omitted). Therefore, "[i]nsignificant and immaterial ... omissions will not invalidate a warrant." <u>United States</u> v.  <u>Sims</u>, 845 F.2d 1564, 1571 (11th Cir. 1988). Furthermore, "[t]he fact than an innocent explanation may be consistent with the facts alleged ... does not negate probable cause." <u>United States</u> v. <u>Fama</u>, 758 F.2d 834, 838 (2d Cir. 1985).

Under the totality of the circumstances, there clearly was a "fair probability" that evidence of the defendant being a felon in possession of a firearm would be found in the Acura and/or the defendant's residence.  Thus, (1) the alleged victim, S.J., reported that the defendant was the shooter, and that he was driving a black Acura; (2) D.J., the passenger in her car, confirmed S.J.'s account; (3) A.C. reported that she saw the defendant take a firearm out of a black Acura and begin shooting; (4) the defendant affirmed that he regularly drove a black Acura and (5) surveillance showed a black Acura with Florida tag JDSW52 parked at the defendant's residence (see Doc. 33-1).

Although S.J. and D.J. subsequently decided to not cooperate

with the investigation, and S.J. stated she was no longer sure if the defendant was the shooter, S.A. Boshek explained that witnesses may withdraw their cooperation for safety reasons, and that they may be especially reticent to testify against family or friends. Moreover, D.J. affirmed that he was "sure" the defendant was the shooter. Therefore, Judge Sneed was not required to disregard that witness evidence in evaluating whether there was probable cause in this matter.

Furthermore, the defendant failed to make the requisite showing that inclusion of the omitted facts would have negated probable cause. The defendant argues that S.A. Boshek wrongfully omitted: (1) witness reports of three different vehicles in the vicinity of the shooting, none of which was an Acura, and (2) that the alleged victim failed to obtain the tag number despite following the car after the shooting (Doc. 33, pp. 10–11). The defendant also contends that there was a lack of evidence connecting the Acura to the shooting (id.).

At the hearing, the defendant focused on the omission of two witness statements identifying different makes of cars in the area of the shooting. Specifically, an anonymous witness reported that a black Honda Accord and a faded black Crown Victoria were involved in the shooting (Doc. 45, p. 2). Additionally, A.H. saw a black 4-door car with an emblem

19

that she later identified as a Mazda symbol (id., p. 3).[4]

The Government disputes that these were material facts because those witnesses did not see the shooting (Doc. 37, p. 13). Thus, the anonymous witness stated that she "heard the shots, but did not see anything" and A.H. stated that she was inside her house and went to her window after she heard gunshots (Doc. 45, pp. 2–3). Furthermore, these witness reports are not even consistent with each other. In contrast, S.J., D.J. and A.C. all reported at the shooting scene that the defendant was the shooter in a black Acura. They also would have had the best view of the vehicle. Therefore, the defendant's contention is unavailing that, if those witness reports of different cars were included in the affidavit, they would have negated probable cause.

The defendant also contends that S.A. Boshek improperly omitted that S.J. did not get the Acura tag number despite following the car after the shooting (Doc. 33, p. 10). The defendant does not explain, nor is it apparent, how the alleged victim's failure to capture the tag number undermines probable cause because S.A. Boshek did not state that any witness identified the tag number of the subject car. The insignificance of

---

[4] A.H.'s daughter reported seeing a black car with a rounded end, but she did not identify the make of the car (see Doc. 33, p. 5).

this purported omission underscores the weakness of the defendant's argument. Furthermore, the Government persuasively argues that S.J. following the car bolsters her identification because she had further opportunity to observe the make of the car as she was following it.

Finally, the defendant argues that law enforcement lacked evidence connecting the Acura to the scene of the shooting (id., pp. 10–11). The defendant focuses on S.A. Boshek's omission that SPPD officer Graves could "not verify that [the Acura] was the exact vehicle" used during the shooting (id., p. 6). This contention is confounding because law enforcement subsequently learned from the defendant himself that he regularly drove his girlfriend's black Acura TSX, which had Florida license tag number JDSW52. This evidence provides the necessary link between the Acura and the shooting. Thus, Magistrate Judge Sneed could make the common sense and reasonable inference that there was a fair probability that the black Acura the defendant was reportedly driving at the time of the shooting was the black Acura with Florida license JDSW52 that he regularly drove and was registered to his home address.

In sum, the search warrant affidavit sets forth sufficient facts to demonstrate probable cause to search the Acura and residence. Furthermore, the inclusion of the omissions identified by the defendant

would not have negated probable cause. Accordingly, they would not have prevented Magistrate Judge Sneed from lawfully issuing the search warrants in this case.[5]

For these reasons, the defendant failed to make the preliminary showing necessary to warrant a <u>Franks</u> hearing, and he certainly has not shown that probable cause was lacking for the issuance of either search warrant. I therefore recommend that the defendant's requests for a <u>Franks</u> hearing and to suppress evidence be denied.

## V.

The defendant also challenges the search warrants on the ground that they were overbroad (Doc. 33, pp. 12–15). Specifically, he argues that the request to search and seize papers was "overly broad" and "not supported by probable cause" (<u>id</u>., p. 14). As a result, the defendant requests the court to suppress the handwritten ledger found in his residence. This contention is meritless.

---

[5]The defendant complains about several other circumstances in the factual background section of his motion (<u>see</u> Doc. 33, pp. 2–9), the materiality of which the defendant did not explain in his memorandum of law. For example, the defendant states that law enforcement did not see the Acura subject to the search at his residence every time they conducted surveillance of the home (Doc. 33, p. 6). The defendant also points out that S.J. did not recognize the black Acura the defendant was driving even though she states that she knew the defendant for several years (<u>id</u>., p. 5). This appears to be a strained challenge to S.J.'s credibility, which is unavailing, especially in light of S.J.'s detailed report of the shooting.

As pertinent here, the search warrants authorized law enforcement to search for and seize "any and all papers relating to the sale and purchase of any and all firearms and ammunition; and [a]ny and all photographs and receipts or paperwork relating to the illegal purchase and possession of said firearms and ammunition" (Docs. 33-1, 33-2, Exh. B). Contrary to the defendant's contention, there is nothing overbroad about these requests. They are expressly limited to papers and photographs related to the possession of firearms and ammunition. We regularly see requests to search for papers and photographs without this limitation, or requests with the limitation but with the broad term "and other papers" tagged on to the end, or with the non-limiting language "including, but not limited to." We would also see in these circumstances requests to search for papers reflecting the ownership or occupancy of the residence.

The items requested in these search warrants were a model of restraint. Upon a showing of probable cause, I would not have a moment's hesitation in authorizing a search for the particularized items.

The defendant argues that evidence of the offense of being a felon in possession of a firearm or ammunition "would be the discovery of a firearm or ammunition in [the defendant's] possession, not documentary evidence," and that the search "was nothing more than a fishing expedition"

23

for evidence of illegal narcotics activity (Doc. 33, pp. 12–13). This argument is similarly frivolous. Documentary evidence, such as receipts, or photographs of the defendant with a firearm, would provide strong evidence of the defendant's possession of a firearm.

The defendant quibbles that a convicted felon would not have paperwork of his gun purchase (id., p. 14). The search warrant affidavits state that "[f]irearms are valuable and costly, especially for felons, such as GREEN" (Doc. 33-1, ¶16). Consequently, the defendant may well keep records showing how, and from whom, he obtained guns. Moreover, it is amazing what materials defendants keep since they do not expect to be the subject of a search warrant. For example, in my experience, it is not uncommon for a defendant to have a photograph of himself with a firearm, as well as drugs. Indeed, they have posted such pictures on social media. And, the defendant's suggestion that criminals would not keep incriminating materials is belied by the fact that the search in this case turned up an apparent drug ledger.

Alternatively, the Government argues that, even if probable cause to search for documents was lacking, suppression is unwarranted because of the good faith exception to the exclusionary rule in United States v. Leon, 468 U.S. 897 (1984) (Doc. 37, pp. 18–19). The defendant's

24

overbreadth argument is so lacking in merit that there is no reason to consider the good faith exception.

VI.

For the reasons stated above, I recommend that the defendant's Motion to Suppress and Request for Evidentiary Hearing Pursuant to <u>Franks</u> (Doc. 33) be denied in all respects.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: FEBRUARY *13*, 2020.

NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. 636(b)(1)(C). Under 28 U.S.C. 636(b)(1), a party's failure to object to this report's proposed findings and recommendations waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions.