UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No: 8:19-cr-314-T-36TGW

RONRICO D. GREEN

_____/

## **O R D E R**

This cause comes before the Court upon the Report and Recommendation filed by United States Magistrate Judge Thomas G. Wilson on February 13, 2020 (the "R&R"). (Doc. 57). In the R&R, Magistrate Judge Wilson recommends that Defendant's Motion to Suppress and Request for Evidentiary Hearing Pursuant to *Franks* (the "Motion"), (Doc. 33), be denied, (Doc. 57 at 25).

All parties were furnished copies of the R&R and were afforded the opportunity to file objections, pursuant to 28 U.S.C. § 636(b)(1). Defendant Ronrico D. Green ("Defendant") filed an Objection to Report and Recommendation on February 27, 2020 (the "Objection"). (Doc. 63). The Government filed its response thereto on March 7, 2020. (Doc. 64). Upon consideration of the R&R, and upon this Court's independent examination of the file, it is determined that the R&R should be adopted.

### I.       BACKGROUND

On April 12, 2019, United States Magistrate Judge Julie S. Sneed issued two search warrants for the Defendant's residence, located at 5888 59th Street North, Pinellas County, Florida, and a "black, four-door Acura TSX bearing Florida tag JDSW52 and registered to Tanesha Castleberry." (Docs. 33-1 at 1, 10; 33-2 at 1, 10). The search warrants pertained to Defendant's alleged violation of 18 U.S.C. § 922(g) as a felon in possession of a firearm or ammunition. (Docs. 33-1 at 1; 33-2 at 1). The Government identified the following items as items to be seized: (1)

firearms and ammunition; (2) papers and receipts pertaining to the sale and purchase of any and all ammunition and firearms; and (3) photographs and receipts pertaining to the illegal purchase and possession of these firearms and ammunition. (Docs. 33-1 at 1; 33-2 at 11). Magistrate Judge Sneed concluded that there was probable cause to believe that these locations contained evidence of the purported crime.

Scott Boshek ("S.A. Boshek"), a special agent employed by the Bureau of Alcohol, Tobacco, and Firearms, provided affidavits in support of the search warrants. (Docs. 33-1 at 2–8; 33-2 at 2–8). The affidavits are identical. S.A. Boshek alleged the following facts in the affidavits. On or about March 25, 2019, at approximately 12:11 p.m., St. Petersburg Police Department ("SPPD") officers responded to a "shots heard" call in St. Petersburg, Florida. (Docs. 33-1 ¶4). S.J., the alleged victim, informed officers that Defendant was responsible for the shooting. *Id.* at ¶5. According to S.J., as she arrived at the residence located at 1604 13th Street to visit her family and friends, she noticed Defendant pull up in a black four-door Acura, which he parked nearby. *Id.* at ¶6. S.J. stated that Defendant exited the Acura, carrying a long, black colored rifle and shouting at everyone outside. *Id.* S.J. explained that Defendant initially fired rounds from the rifle into the air. *Id.* S.J. also informed officers that, when she attempted to calm Defendant down, Defendant replied, "Fuck that shit," and pointed the rifle at her, which caused her to fall on the ground. *Id.* According to S.J., Defendant then fired multiple shots over her head before entering the black Acura and driving away. *Id.* S.J. told officers that she had known Defendant for approximately six years, her mother had been a mother figure to Defendant, and she considered Defendant as her brother. *Id.* at ¶5.

D.G., a passenger in S.J.'s vehicle, confirmed S.J.'s account of the shooting and stated that he had observed Defendant shooting the rifle and shouting at S.J. *Id.* at ¶7. D.G. advised officers

that Defendant had known S.J.'s family for a while. *Id.* A.C., a family member of S.J., also reported observing a black Acura. *Id.* at ¶8. Further, A.C. advised that she observed "Rico," a shortened version of Defendant's first name, grab a "long military firearm" from inside the vehicle before firing rounds from the firearm. *Id.* Although A.C. did not know Defendant personally, she had seen pictures of him on Facebook. *Id.* A forensic technician with SPPD processed the scene, which involved multiple ammunition casings throughout the street and several vehicles that had been shot during the incident, and found ten casings of Remington-Peters .223 caliber ammunition in the approximate location where S.J. claimed that Defendant had parked the Acura. *Id.* at ¶9.

On or about April 6, 2019, the Pinellas County Sheriff's Office arrested Defendant at his residence for the shooting. *Id.* at ¶11. A black four-door Acura TSX bearing Florida tag JDSW52 was parked in the residence's driveway at the time of Defendant's arrest. *Id.* S.A. The next day, Defendant bonded out of jail. *Id.*

On or about April 9, 2019, D.G. informed SPPD detectives that he no longer desired to cooperate with the investigation, but he was "sure" that Defendant committed the shooting. *Id.* at ¶13. S.J. similarly informed the SPPD detectives that she no longer wished to cooperate with law enforcement and that "now [she] wasn't sure if it was [Defendant] who committed the shooting." *Id.* S.A. Boshek stated that, based on his experience and training, "both victims and witnesses of violent crimes have a tendency to withdraw their cooperation following their initial interactions with law enforcement." *Id.* at ¶15. S.A. Boshek also explained that victims and witnesses are sometimes concerned for the safety of themselves or their families when it comes to providing statements or testifying against a violent criminal. *Id.* Further, according to S.A. Boshek, victims and witnesses are "especially likely" to be uncooperative when either family members or close friends serve as the subject of the investigation. *Id.*

Also on or about April 9, 2019, Defendant voluntarily agreed to meet with SPPD detectives to discuss the case, during which time he stated that he had resided at his residence for two years, he knew S.J. only because he once dated her sister, and he drove a black Acura that was registered to his girlfriend. *Id.* at ¶12. S.A. Boshek learned that the Acura was registered to Tanesha Castleberry, who used Defendant's residence for the vehicle's registered address. *Id.* at ¶14. Defendant denied any involvement in the shooting. *Id.* at ¶12. The following day, S.A. Boshek queried the FBI's National Crime Information Center database to review Defendant's criminal history, which revealed that Defendant was a convicted felon with at least four prior felony convictions, including, without limitation, possession of cocaine and sale of cocaine. *Id.* at ¶17. In the affidavit, S.A. Boshek stated that, in his experience, drug dealers commonly re-engage in drug offenses and are likely to keep guns at home or in the vehicles that they use to ensure protection from robberies. *Id.* He also explained that, based on his experience, individuals in possession of illegal firearms often store the firearms in their homes or vehicles:

> Homes are perhaps especially common for illegally storing firearms, given the protections homes have from warrantless entries by law enforcement and a home's inherent ability to store a firearm safe from the public's view and in a place that is readily accessible. Additionally, individuals who engage in violent crimes often store guns in their vehicles, as a vehicle is often needed to get the criminal to the scene of the crime.

*Id.* at ¶16. S.A. Boshek explained that he set forth only the facts that he believed were necessary to establish probable cause, not each and every fact known to him regarding the investigation. *Id.* at ¶3.

After Magistrate Judge Sneed issued the search warrants on April 12, 2019, law enforcement executed the warrants on April 15, 2019. (Doc. 57 at 5). As a result of the searches, law enforcement found a distribution amount of crack cocaine and a digital scale in the Acura, and the packaging containing the crack cocaine had Defendant's DNA on it. (Doc. 37 at 1).

4

Additionally, law enforcement found a drug ledger in Defendant's residence. *Id.* Thereafter, a federal grand jury returned a one-count indictment charging Defendant with knowingly and intentionally possessing crack cocaine with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (Doc. 1 at 1).

Defendant timely filed the Motion, in which he requested the Court to review: (1) the probable cause finding that resulted in Magistrate Judge Sneed's issuance of the search warrants; (2) the scope of the evidence obtained by law enforcement in the search warrant application; and (3) the voluntariness of the Defendant's statements to law enforcement when he met with law enforcement on April 15, 2019. (Doc. 33 at 9). Defendant sought a hearing in accordance with *Franks v. Delaware*, 438 U.S. 154 (1978) ("*Franks*"), arguing that S.A. Boshek omitted numerous material facts from the search warrant application that would have negated Magistrate Judge Sneed's probable cause determination if he had included them. *Id.* at 10–12. Alternatively, Defendant argued that the search warrants were overly broad and sought irrelevant evidence because S.A. Boshek did not establish probable cause to search and seize "any and all papers and receipts relating to the sale and purchase of any and all firearms and ammunition" or "any and all photographs and receipts or paperwork relating to the illegal purchase and possession of said firearms and ammunition." *Id.* at 12–14.

The Government responded in opposition, arguing first that Defendant lacks standing to challenge the search of the Acura, which is registered to Tanesha Castleberry. (Doc. 37 at 7–8). Next, the Government argued that Defendant's request for a *Franks* hearing should be denied because Defendant fails to offer any proof in support of his argument and fails to carry his burden of demonstrating that any omission was intentional or reckless. *Id.* at 10–12. The Government also argued that inclusion of the alleged omissions would not have negated probable cause. *Id.* at 12–

15. Regarding Defendant's alternative request for relief, the Government asserted that probable cause supported the search and seizure of the documents and, even if probable cause did not support such search and seizure, the good faith exception to the exclusionary rule renders suppression unwarranted. *Id.* at 16–20.

Following the Motion's referral, Magistrate Judge Wilson held a hearing on the Motion and issued the R&R. Therein, Magistrate Judge Wilson found that Defendant lacks standing to challenge the search of the Acura. (Doc. 57 at 11). Magistrate Judge Wilson nonetheless examined the merits of the Motion, finding that Defendant failed to meet the first prong of the *Franks* test because he did not present any evidence that S.A. Boshek omitted material facts from the affidavit to deliberately mislead Magistrate Judge Sneed or that he acted in reckless disregard of the truth. *Id.* at 17. Similarly, Magistrate Judge Wilson explained that the affidavit sets forth sufficient facts demonstrating probable cause to search the Acura and Defendant's residence, explained that the inclusion of Defendant's identified omissions from the affidavit would not have negated probable cause. *Id.* at 21–22. Finally, Magistrate Judge Wilson rejected Defendant's overbroad challenge as meritless. *Id.* at 22.

## II.   LEGAL STANDARD

When a party makes a timely and specific objection to a magistrate judge's report and recommendation, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3). With regard to those portions of a report and recommendation not objected to, the district judge applies a clearly erroneous standard of review. *See Gropp v. United Airlines, Inc.*, 817 F. Supp. 1558, 1562 (M.D. Fla. 1993) (Kovachevich, J.). The district judge may accept, reject, or modify in whole or in part, the report and recommendation

of the magistrate judge. Fed. R. Crim. P. 59(b)(3). The district judge may also receive further evidence or resubmit the matter to the magistrate judge with further instructions. *Id.*

### III.    ANALYSIS

Defendant raises two objections to the R&R: (1) he has standing to challenge the search of the Acura; and (2) he has satisfied the requirements for a *Franks* hearing. (Doc. 63 at 3–7). The Government argues that the Court should overrule both objections. (Doc. 64 at 1). The Court will address each objection.

### A.  Fourth Amendment Standing

Defendant first claims that the R&R errs by concluding that he lacks standing to challenge the search of the Acura. *See* (Doc. 63 at 3). This objection will be overruled.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). To assert a Fourth Amendment violation, a defendant must establish that he or she had a legitimate expectation of privacy in the place that was searched. *See Rakas v. Illinois*, 439 U.S. 128, 143–49 (1978); *United States v. Gonzales*, 940 F.2d 1413, 1420 n.8 (11th Cir. 1991) ("To challenge a search or seizure as violative of the [F]ourth [A]mendment, a criminal defendant must show that he has a legitimate expectation of privacy in the property searched or seized."). This "concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search; but it should not be confused with Article III standing, which is jurisdictional and must be assessed before reaching the merits." *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018).

On a motion to suppress, the defendant carries the burden of proving facts demonstrating the reasonableness of his or her expectation of privacy in the searched area. *United States v. Miravalles*, 280 F.3d 1328, 1332 (11th Cir. 2002). An individual has an expectation of privacy that is protected by the Fourth Amendment if: (1) he or she has a subjective expectation of privacy; and (2) society is prepared to recognize such expectation as objectively reasonable. *Id.* A "legitimate" expectation of privacy "means more than a subjective expectation of not being discovered." *Rakas*, 439 U.S. at 143 n.12. "Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Id.* The right to exclude others from property serves as one of the principal rights attaching to property, "and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude." *Id.* However, expectations of privacy that are protected by the Fourth Amendment "need not be based on a common-law interest in real or personal property, or on the invasion of such an interest." *Id.*

In responding to the Motion, the Government argued that Defendant lacks Fourth Amendment standing to challenge the search of the Acura under *United States v. Gibson*, 708 F.3d 1256 (11th Cir. 2013). (Doc. 37 at 7–8). Finding *Gibson* to be analogous, Magistrate Judge Wilson agreed. (Doc. 57 at 10).

In *Gibson*, the Drug Enforcement Agency had reason to believe that the defendant, as the frequent driver of a Chevrolet Avalanche, used the vehicle in drug trafficking. 708 F.3d at 1261. Although the defendant frequently drove the Avalanche, he did not own the vehicle. *Id.* Without a warrant, an agent placed a tracking device on the undercarriage of the Avalanche on January 27, 2009, while the vehicle was parked in the driveway of the defendant's residence, with its rear end

extending over a sidewalk. *Id.* at 1262. Placing the device did not require entry into the vehicle, nor did the device have a microphone or camera; it merely transmitted the Avalanche's location. *Id.* On February 20, 2009, while tracking the Avalanche, law enforcement pulled the vehicle over after observing the driver commit a traffic infraction. *Id.* Upon pulling the vehicle over, law enforcement identified the driver as the vehicle's owner, not the defendant. *Id.* After smelling marijuana emanating from the vehicle, the deputy asked the owner if he could search the Avalanche, to which the owner consented. *Id.* at 1262–63. Law enforcement found two kilograms of cocaine inside the vehicle. *Id.* at 1263. Significantly, the defendant was not inside the vehicle at this time. *Id.*

The district court held that the defendant lacked standing to challenge the installation of the tracking device on the Avalanche, as he had no reasonable expectation of privacy in the vehicle when the agent installed the device, and lacked standing to object to law enforcement's stop of the Avalanche because he was not in the vehicle at that time, thereby showing that the defendant lacked an ownership or a possessory interest in the Avalanche. *Id.* On appeal, the defendant argued that the district court should have suppressed the evidence obtained as a result of the installation of the tracking device. *Id.* at 1275. As to his standing under the Fourth Amendment, the defendant asserted that he had standing to challenge the search because he had a "subjective and objective expectation of privacy" in the Avalanche, as evidenced by his possession and control of the Avalanche when the agent installed the device, another agent's observation of the defendant driving the vehicle, and that agent's subsequent testimony that his belief that the defendant was involved in drug trafficking served as the purpose for installing the device. *Id.* at 1276.

The Eleventh Circuit initially recognized an individual who borrows a vehicle with the vehicle owner's consent has a legitimate expectation of privacy in the vehicle and standing to

challenge its search while it is in his possession. *Id.* at 1277 (citing *United States v. Miller*, 821 F.2d 546, 548 n.2 (11th Cir. 1987)). The defendant paid for the insurance and maintenance of the Avalanche, and often drove the vehicle, but did not own it. *Id.* In contrast with a case from the Fifth Circuit that the court examined, the defendant borrowed the vehicle when the tracking device was installed, but not when the vehicle was searched and drugs were discovered. *Id.* The Eleventh Circuit accordingly held that, although the defendant had standing to challenge the installation and use of the tracking device while the Avalanche was in his possession, he lacked standing to challenge "the use of the tracking device to locate the Avalanche when it was moving on public roads and he was neither the driver nor a passenger." *Id.*

Significantly, the court held that the defendant lacked Fourth Amendment standing to challenge the search and seizure of the Avalanche on February 20, 2009, because he lacked a possessory interest in the vehicle on that date. *Id.* The majority explicitly rejected the dissent's conclusion that the defendant had standing under the Fourth Amendment to challenge the February 20, 2009 search, explaining that the defendant had failed to establish that he had exclusive custody and control of the Avalanche. *Id.* The defendant had never claimed that he had exclusive custody and control of the Avalanche, nor did he possess custody or control of the vehicle when it was searched on February 20, 2009. *Id.* at 1278. The court concluded that the defendant had failed to establish that he had the requisite reasonable expectation of privacy in the vehicle when it was searched on February 20, 2009 "because he was not the legal owner of the Avalanche, he ha[d] not established that he had exclusive custody and control of the Avalanche, and he was neither a driver of, nor a passenger in, the Avalanche when it was searched." *Id.*

Magistrate Judge Wilson correctly recognized that *Gibson* is analogous to the instant action. (Doc. 57 at 10). Asserting that he has standing to challenge the search of the Acura,

Defendant presently attempts to distinguish *Gibson* on the basis that "the present case and search was not a search incident to a traffic stop, but rather a search of a vehicle based on a search warrant." (Doc. 63 at 4). But, as the Government points out, this distinction is unavailing. Just like *Gibson*, this case involves a search under the Fourth Amendment and an accompanying challenge to the search by a defendant who uses, but does not own, the vehicle. In *Gibson*, law enforcement placed the tracker on the Avalanche and, while monitoring the vehicle's location, conducted a traffic stop and searched the vehicle.[1] Here, law enforcement searched the Acura following Magistrate Judge Sneed's issuance of the warrant. In *Gibson*, the defendant challenged the warrantless search as illegal.[2] Here, Defendant challenges the search as illegal based on the information provided, or not provided, in the affidavit for the warrant. Thus, both cases involve challenges to the legality of the searches for the purpose of excluding evidence.

Further, as discussed above, *Gibson* explicitly addressed Fourth Amendment standing, holding that the defendant did not have a reasonable expectation of privacy in the vehicle when it was searched on February 20, 2009, because he was not the legal owner of the vehicle, he was not present in the vehicle when it was searched, and he had failed to present sufficient evidence that he had exclusive custody and control of the vehicle. *Gibson*, 708 F.3d at 1277. The court reached

---

[1] The Government's installation of a GPS tracking device on a target vehicle and its use of such device to monitor that vehicle's movements constitutes a "search" under the Fourth Amendment. *United States v. Jones*, 565 U.S. 400, 404 (2012).

[2] In the R&R, Magistrate Judge Wilson stated that "the search warrants in both cases were premised upon the defendant's, and not the owner's, use of the vehicle." (Doc. 57 at 10). However, search warrants were not issued in *Gibson*—law enforcement placed the tracker on the Avalanche, without a warrant, while the vehicle's rear end extended over a sidewalk, and law enforcement searched the Avalanche upon the owner's consent after pulling the vehicle over and smelling marijuana emanating from therein. 708 F.3d at 1262–63. Regardless, in light of the Court's analysis herein, this distinction between *Gibson* and the present action does not alter the Court's conclusion.

this conclusion notwithstanding the fact that the defendant paid for the vehicle's insurance and maintenance. *Id.* Like *Gibson*, Defendant does not own the vehicle. Instead, although the vehicle was observed in Defendant's driveway and Defendant's address serves as the vehicle's registered address, the Acura is registered to Tanesha Castleberry.[3] Indeed, Defendant even described the vehicle as belonging to his girlfriend. The defendant in *Gibson* used the vehicle, and, here, Defendant admitted to using the Acura. As in *Gibson*, Defendant was not in the Acura when law enforcement conducted the search. Indeed, Defendant concedes in the Objection that he was not present in the Acura at the time of the search. (Doc. 63 at 4). Magistrate Judge Wilson recognized that Defendant failed to present any evidence of exclusive control of the Acura. (Doc. 57 at 10). Neither the Motion nor the Objection demonstrates evidence of Defendant's exclusive custody and control. Defendant's attempt to usher the Court away from the Eleventh Circuit's binding holding in *Gibson* because the instant action did not involve "a search incident to a traffic stop" is therefore unavailing. Magistrate Judge Wilson correctly found *Gibson* to be analogous.

Next, Defendant argues that he maintained an expectation of privacy in the Acura. (Doc. 63 at 4). As noted above, the Supreme Court has recognized that "[l]egitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas*, 439 U.S. at 144 n.12 (1978)) (alteration in original) (internal quotation marks omitted). In this regard, "one of the main rights attaching to property is the right to exclude others"

---

[3] Whether the Acura was located in Defendant's driveway at the time of the search is unclear. Defendant only vaguely stated in the Motion that S.A. Boshek "traveled to [Defendant's] residence to execute the search warrant on both his residence and the black Acura TSX" while Defendant responded to law enforcement's request to visit the police station. (Doc. 33 at 8). As emphasized, Defendant carries the burden of presenting any evidence of exclusive control of the vehicle. For the reasons discussed herein, the record before the Court demonstrates that Defendant has failed to carry that burden.

and "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of the right to exclude." *Byrd*, 138 S. Ct. at 1527 (quoting *Rakas*, 439 U.S. at 144 n.12) (internal quotation marks omitted).

Relying on these principles, Defendant highlights that law enforcement applied for the search warrant, supported by probable cause, based on the factual allegations pertaining to Defendant's use of the Acura. (Doc. 63 at 5). Without providing any accompanying legal support or further explanation, Defendant simply concludes that Defendant's expectation of privacy in the Acura is a right that society recognizes and permits. *Id.* Even assuming that Defendant had a subjective expectation of privacy in the Acura, this brief analysis fails to explain why the warrant's inclusion of factual allegations pertaining to Defendant's use of the Acura—as would be expected in a warrant for the search of that vehicle—results in, or otherwise creates or confers, an expectation of privacy in the Acura that society recognizes and permits. Despite relying on the case law above, Defendant fails to reference concepts of real or personal property law or understandings that are permitted and recognized by society. The analysis is devoid of any discussion or application of "property concepts" necessarily implicated under a Fourth Amendment analysis. *See Byrd*, 138 S. Ct. at 1526 ("Still, 'property concepts' are instructive in 'determining the presence or absence of the privacy interests protected by [the Fourth] Amendment.'"). A review of the Objection for further support of this argument proves fruitless. As such, this argument fails.

In his final challenge to Magistrate Judge Wilson's conclusion on Fourth Amendment standing, Defendant asserts that concluding that he lacks standing under the Fourth Amendment because he neither owns the Acura nor was inside the vehicle at the time of the search would "eviscerate" the Fourth Amendment's protections. (Doc. 63 at 5). As the Government points out,

this argument simply constitutes a policy disagreement with the Eleventh Circuit. (Doc. 64 at 3). As discussed extensively above, the Eleventh Circuit held in *Gibson* that the defendant did not have a reasonable expectation of privacy in the vehicle when it was searched on the date when it was pulled over, and thus he lacked standing under the Fourth Amendment, where he was not the legal owner of the vehicle, he was not present in the vehicle when it was searched, and he had failed to present sufficient evidence that he had exclusive custody and control of the vehicle. In other words, Defendant takes issue with the Eleventh Circuit's holding in *Gibson*. But this Court must follow Eleventh Circuit law. As such, this argument also fails.

Accordingly, for the foregoing reasons, Defendant lacks Fourth Amendment standing to challenge the search of the Acura. Defendant's objection to the R&R on this ground is due to be overruled. In any event, although the Court finds that Defendant lacks Fourth Amendment standing, it will nonetheless address Defendant's second objection.

## B. *Franks* Hearing

Defendant also objects to Magistrate Judge Wilson's conclusion that he fails to make the requisite showing for a *Franks* hearing. *See* (Doc. 63 at 6–7). This objection will be overruled.

"Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) (per curiam). "Affidavits supporting warrants are presumptively valid." *United States v. Lebowitz*, 676 F.3d 1000, 1010 (11th Cir. 2012) (per curiam). However, a defendant is entitled to a *Franks* hearing where he or she makes a "substantial preliminary showing" that (1) "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "the allegedly false statement is necessary to a finding of probable cause."

14

*Franks*, 438 U.S. at 155. Applying this principle to omissions, a defendant is entitled to a *Franks* hearing where he or she makes a "substantial preliminary showing" that "the omissions were made intentionally or with a reckless disregard for the accuracy of the affidavit," *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980)[4], and "the alleged omission[s] would have prevented a finding of probable cause," *Lebowitz*, 676 F.3d at 1010. A defendant who fails to make this "substantial preliminary showing" is not entitled to a *Franks* hearing. *United States v. Barsoum*, 763 F.3d 1329 (11th Cir. 2014).

"[T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171. Significantly, to mandate an evidentiary hearing, "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of *proof*." *Id.* (emphasis added); *United States v. Haimowitz*, 706 F.2d 1549, 1556 (11th Cir. 1983) (finding that the defendant's motion to suppress, which was unaccompanied by an offer or proof, contained only conclusory allegations regarding the affiant's omission). Indeed, "[a]ffidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Franks*, 438 U.S. at 171. Allegations of innocent mistake or negligence do not satisfy this burden. *Id.*

Further, "when assessing whether the alleged false statements or omissions were material, the trial court is to disregard those portions of the affidavit which the defendant has shown are arguably false or misleading." *Barsoum*, 763 F.3d at 1328–29. "Insignificant and immaterial

---

[4] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

misrepresentations or omissions will not invalidate a warrant." *United States v. Ofshe*, 817 F.2d 1508, 1513 (11th Cir. 1987) (citing *Franks*, 438 U.S. at 154).

Magistrate Judge Wilson correctly concluded that Defendant failed to address the first *Franks* prong. (Doc. 57 at 14). In the Motion, Defendant simply claimed that S.A. Boshek "omitted numerous facts" that would have negated the probable cause determination if they had been included in the application for the warrant. (Doc. 33 at 10). Defendant offered no argument regarding whether S.A. Boshek made these omissions intentionally or otherwise with a reckless disregard for the accuracy of the affidavit. Magistrate Judge Wilson notes that, during the hearing on the Motion, Defendant argued that the omissions themselves satisfy this element—in other words, that the omission of facts known to S.A. Boshek from the affidavit thereby implies that S.A. Boshek's omission of these facts was intentional or reckless. (Doc. 57 at 14). While he acknowledges the former Fifth Circuit's recognition of a possibility that the fact of recklessness may be inferred from the proof of the omission itself when the facts omitted are clearly critical to a probable cause finding, Magistrate Judge Wilson nonetheless rejected Defendant's argument that this case constitutes such a circumstance. *Id.* (quoting *Martin*, 615 F.2d at 329). Magistrate Judge Wilson also indicated that Defendant's argument that a hearing would permit him to demonstrate that the information was deliberately or recklessly omitted is insufficient to warrant the hearing. (Doc. 57 at 15). Finally, Magistrate Judge Wilson noted that S.A. Boshek actually included information in the affidavit that was more central to the issue of probable cause than the alleged omissions, such as S.J and A.G. no longer desiring to cooperate and S.J.'s subsequent uncertainty regarding whether Defendant was the shooter. *Id.* at 16. As such, Magistrate Judge Wilson concluded that, if S.A. Boshek did omit a material fact, such omission was not more than non-actionable negligence. *Id.* at 17.

16

Defendant objects, contending that S.A Boshek drafted the application for the search warrant and also executed the search warrant. (Doc. 63 at 6). Defendant states, in conclusory fashion, that S.A. Boshek's "omission of facts could be classified as nothing other than deliberate conduct." *Id.* According to Defendant, S.A. Boshek acted deliberately because "[h]e drafted the application and chose what to include and what not to include." *Id.* However, this argument is merely a reassertion of the argument that Defendant made to Magistrate Judge Wilson—that S.A. Boshek's omission of facts known to him when applying for the warrant implies that such omission was intentional or reckless. As before, this argument once again falls short. The law requires Defendant, as the party requesting the *Franks* hearing, to first make a "substantial preliminary showing" that "the omissions were made intentionally or with a reckless disregard for the accuracy of the affidavit." *Martin*, 615 F.2d at 328. In making this "substantial preliminary showing" Defendant's allegations must be accompanied by an offer of proof, such as affidavits. In the Motion, Defendant failed to even address this prong. He currently fails to demonstrate that the instant action is a circumstance where "the fact of recklessness may be inferred from proof of the omission itself." *Id.* at 329. Indeed, the alleged omissions simply do not "give rise to the inference" that S.A. Boshek "acted with reckless disregard for the accuracy of the information he presented to the magistrate." *Id.* In objecting, Defendant offers only a conclusory assertion for why the R&R purportedly errs. However, Defendant's challenge "must be more that conclusory." *Franks*, 438 U.S. at 171. As such, this argument is unpersuasive, and Defendant fails to satisfy the first prong of the *Franks* test.

Magistrate Judge Wilson also correctly concluded that Defendant failed to satisfy the second prong of the *Franks* test. (Doc. 57 at 17). In the Motion, Defendant explicitly identifies the following as material omissions by S.A. Boshek: (1) other witnesses to the shooting had identified

three different vehicles, none of which were an Acura, as vehicles involved in the shooting; and

(2) S.J. advised that she had followed the Acura after the shooting, but was unable to provide a tag

number.[5] (Doc. 33 at 10). Additionally, Defendant claims that, although Officer Graves located a

black Acura TSX at the residence which was believed to belong to Defendant, Graves concluded

that he did not have evidence to determine that the Acura he observed, with tag JDSW52, was the

vehicle involved in the shooting. *Id.* According to Defendant, there was a lack of evidence

connecting the Acura to the shooting. *Id.*

Preliminarily, Magistrate Judge Wilson observed that:

> Under the totality of the circumstances, there clearly was a "fair
> probability" that evidence of the defendant being a felon in
> possession of a firearm would be found in the Acura and/or the
> defendant's residence. Thus, (1) the alleged victim, S.J., reported
> that the defendant was the shooter, and that he was driving a black
> Acura; (2) D.[G.], the passenger in her car, confirmed S.J.'s account;
> (3) A.C. reported that she saw the defendant take a firearm out of a
> black Acura and begin shooting; (4) the defendant affirmed that he
> regularly drove a black Acura and (5) surveillance showed a black
> Acura with Florida tag JDSW52 parked at the defendant's residence.

(Doc. 57 at 18).

Magistrate Judge Wilson rejected Defendant's contention that the inclusion of the other

witnesses' reports of different vehicles would have negated probable cause, recognizing that the

anonymous witness and A.H. merely heard the gunshots and did not witness the shooting. *Id.* at

20. Further, the reports of these witnesses are inconsistent, whereas S.J., D.G., and A.C. observed

---

[5] In the Motion, Defendant claimed that "the independent witnesses . . . identified vehicles involved
in the shooting as a black Mazda, a black Honda Accord, and a faded black Crown Victoria." (Doc.
33 at 10). A.H.'s daughter, A.B., also advised officers that she saw a black car with a rounded
shape. *Id.* at 5. At the hearing on the Motion, Defendant focused on an anonymous witness's
purported observation of a black Honda Accord and a faded black Ford Crown Victoria at the
scene of the shooting, as well as A.H.'s purported observation of a black four-door vehicle bearing
a Mazda emblem.

Defendant in the black Acura.[6] *Id.* Next, Magistrate Judge Wilson found that Defendant fails to explain how S.J.'s failure to capture the Acura's tag number undermines probable cause, considering that S.A. Boshek did not state that any witness identified the Acura's tag number in the affidavit. *Id.* at 20. Magistrate Judge Wilson agreed with the Government that S.J.'s decision to follow the Acura actually bolsters her identification of the vehicle, as she had further opportunity to observe the vehicle as she followed it. *Id.* at 21. Finally, Magistrate Judge Wilson rejected Defendant's argument regarding a lack of evidence connecting the Acura to the shooting, highlighting that Defendant himself admitted that he drove his girlfriend's Acura. *Id.* On this basis, Magistrate Judge Wilson concluded that probable cause to conduct the search existed and the inclusion of Defendant's identified omissions would not have negated probable cause. *Id.* As such, the omissions would not have prevented Magistrate Judge Sneed from lawfully issuing the warrants. *Id.* at 22.

Defendant objects, merely claiming that the inclusion of the material facts discussed in the R&R would have negated probable cause.[7] (Doc. 63 at 7). Thus, Defendant now simply reiterates

---

[6] As noted above, S.J. observed Defendant in the black Acura and D.G "confirmed S.J.'s account of the shooting." (Doc. 33-1 ¶7).

[7] Defendant also briefly claims that, "[b]ased on the circumstantial nature of the evidence law enforcement had regarding the vehicle and individual that was involved in the shooting," S.A. Boshek's omission of "those material facts" discussed in the R&R deprived Magistrate Judge Sneed of "having a fully opportunity to determine if probable cause supported the issuance of the search warrants." (Doc. 63 at 7). This argument is nearly identical to Defendant's argument in the Motion. (Doc. 33 at 11). To the extent that this conclusory statement is intended to challenge Magistrate Judge Sneed's probable cause determination, the Court rejects this argument in light of the analysis herein. Further, although Defendant asserts that the omissions deprived Magistrate Judge Sneed of an opportunity to determine whether probable cause existed based on "the circumstantial evidence law enforcement had" regarding the "*individual* that was involved in the shooting," he does not expand upon this conclusory statement. *Id.* (emphasis added). In any event, as discussed extensively herein, S.A. Boshek stated in the affidavit that S.J., D.G., and A.C. identified Defendant as the shooter. (Doc. 33-1 ¶¶6–8). S.A. Boshek also stated therein that, although S.J. subsequently claimed she was unsure whether Defendant committed the shooting

the argument that he made before Magistrate Judge Wilson. But Defendant's one-sentence argument fails to provide any cogent basis for why the R&R errs. The anonymous witness and A.H., neither of whom witnessed the shooting, provided inconsistent observations of vehicles at the scene, whereas witnesses at the scene advised officers that Defendant was in a black Acura. The inclusion of the statements of the anonymous witness and A.H. would not have negated probable cause.[8] Further, as Magistrate Judge Wilson recognized, S.A. Boshek did not state that any witness had identified the tag number of the Acura, and, in light of the other allegations in the affidavit, the Court is unpersuaded that the inclusion of this fact would have negated probable cause. Finally, regarding the alleged lack of evidence connecting the Acura to the shooting, witnesses at the scene observed Defendant in a black Acura, with S.J. even following the vehicle; Defendant admitted that he drove a black Acura registered to his girlfriend; and law enforcement's search of Florida's Driver and Vehicle Information Database revealed that the black Acura bearing license plate number JDSW52, which had been observed in Defendant's driveway, was registered to Tanesha Castleberry, who used Defendant's residence for the vehicle's registered address. Thus, this argument again falls short, and, as Magistrate Judge Wilson concluded, the Acura was sufficiently linked to the shooting. Therefore, Defendant fails to satisfy the second prong of the *Franks* test.

---

and Defendant denied any involvement in the shooting, D.G. stated that he was "sure" that Defendant was the shooter. *Id.* at ¶¶12–13.

[8] Nor would the inclusion of A.B.'s statement that, according to Defendant, she observed only a "black car, with a rounded shape, with dark tinted windows" have negated probable cause. (Doc. 33 at 5).

For the foregoing reasons, Defendant fails to make the preliminary showing necessary to warrant a *Franks* hearing. As such, Defendant's objection to the R&R on this ground is due to be overruled.

**IV.      CONCLUSION**

Accordingly, it is hereby **ORDERED** as follows:

1. Defendant's Objection to Report and Recommendation (Doc. 63) is **OVERRULED**.

2. The Report and Recommendation of Magistrate Judge Wilson (Doc. 57) is **ADOPTED**, **CONFIRMED**, and **APPROVED** in all respects and is made a part of this Order for all purposes, including appellate review.

3. Defendant's Motion to Suppress and Request for Evidentiary Hearing Pursuant to *Franks* (Doc. 33) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on April 27, 2020.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any